IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE KERWIN HENDERSON, | No. CIV S-06-2369-RRB-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| ADAMS, et al., | |
| Respondents. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondents' answer (Doc. 13), and petitioner's reply (Doc. 14). Also before the court are a number of other filings by petitioner and responses thereto by respondents.[1]

/ / /

---

[1] In particular, petitioner filed a document entitled "Motion for Leave to File Amended Supplemental Complaint to Include More and Different Facts. . ." (Doc. 35). Respondents have filed a response (Doc. 36). The court finds that petitioner's filing is not really an amended petition, but is further briefing in support of his original petition and should be considered as such.

1

## I. BACKGROUND

**A.** **Facts**[2]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> . . . [T]he victim in this case was the 14-year-old daughter of defendant's girlfriend. The crimes were uncovered after the victim confided to a friend that defendant had raped her earlier that day, August 17, 2001. The victim's 10-year-old sister also said defendant had "touched" her. Later that day, the victim's friend informed her aunt of the victim's report. After waiting several days, the aunt notified the sheriff's department, which dispatched officers to the children's residence to ascertain their condition.
> Two uniformed officers encountered defendant when he opened the front door. One of the officers tried to handcuff defendant while they spoke with the children, but he broke free and ran away. Backup units were called in for a manhunt. After a brief pursuit, several officers cornered defendant on the patio of a nearby apartment. Rather than surrender, he put a knife to his throat and threatened to kill himself. He begged the officers to shoot him, telling them that he was "going down for this." The officers ultimately subdued him.
> According to the victim's statement to the investigating officer, defendant raped and orally copulated her on the sofa in the living room of her residence on August 17 and 20, 2001. . . .

At this point, the state court added at footnote 3 the following:

> The victim's account of defendant's crimes was introduced by way of prior inconsistent statements of the victim, who recanted those statements at trial. The victim admitted her mother was angry with her for making the accusations leading to defendant's arrest. Following trial, the victim told a criminal investigator from the district attorney's office that she had lied during trial because she thought it would make her mother feel better. The probation report recounted that the victim "informed the investigator the defendant did, in fact, rape her and that all [of] the information she originally reported to the officer had been true."
> The victim's sister also testified that she had falsely reported defendant because the victim asked her to lie.

///

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

The state court continued its statement of the facts:

> . . . Defendant's semen was found on both sides of a pillow from that sofa. Tests of the victim's panties identified two sperm. The technician who conducted the DNA testing testified that the genetic profile of the male body fluids found on the panties, which matched that of defendant, occurred once in every 270,000 African-Americans. The genetic profile of the sperm found on the sofa cushion, which matched defendant's, occurred once in every 150 billion African-Americans. Defendant is African-American.
>
> The victim and her sister submitted to rape examinations at the University of California Davis Medical Center on August 22, 2001. Sheridan Whalen, the nurse practitioner who conducted the examinations, testified the victim told her defendant had orally copulated [her] and placed his penis in her vagina on August 16 and 17, and had ejaculated on the latter date. The victim also told Whalen that defendant inserted his finger into her vagina and orally copulated her on August 20 and 21, 2001. Whalen testified that most examinations of children subjected to sexual abuse revealed no injury, even in those cases where the defendant admits penetration. Whalen's examination disclosed that both the victim and the victim's sister showed hymenal trauma which would only be present in a child who had suffered vaginal penetration. The injuries in both girls had healed, from which Whalen inferred that the injuries were at least four days old, since it takes from four to 10 days for a vaginal wound to heal. Once the injuries had healed, it was difficult to pinpoint when they occurred.
>
> On cross-examination, Whalen testified that the narrowing of the victim's hymen "is something in the field that is seen only in children with the history of sexual abuse." Following Whalen's testimony, defendant moved to strike her medical findings. The court granted the motion in part, and gave the following admonishment to the jury prior to argument: "There was also evidence testified to by Miss Whalen that there was possibly some sexual penetration of [the victim] that may have occurred prior to August the 17th, 2001. That testimony is ordered stricken from the record. You are not to consider that for any purpose, period."
>
> The only defense witness was defendant's former wife, who was still married to him when the offenses occurred. She testified that defendant was with her the morning of August 17, 2001, and that he drove her to the airport for a flight at 12:00 p.m.

**B.   Procedural History**

Petitioner was convicted following a jury trial of one count of forcible rape, four counts of forcible oral copulation, one count of committing lewd and lascivious acts, one count of assault with a deadly weapon on a peace officer and felony and misdemeanor resisting an officer. He was sentenced to 53 years, 4 months in state prison. Petitioner's conviction and sentence were affirmed on direct appeal in a reasoned decision issued by the California Court of

1  Appeal on November 20, 2005.  The California Supreme Court denied direct review without
2  comment or citation on February 8, 2006.  Petitioner filed four separate state post-conviction
3  actions in the California Supreme Court, all of which were denied without comment or citation.
4  Respondent concedes the claims raised in the instant federal petition are exhausted.
5
6                          **II.  STANDARDS OF REVIEW**
7            Because this action was filed after April 26, 1996, the provisions of the
8  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively
9  applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.
10 (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA
11 does not, however, apply in all circumstances.  When it is clear that a state court has not reached
12 the merits of a petitioner's claim, because it was not raised in state court or because the court
13 denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal
14 habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.
15 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach
16 petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208
17 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on
18 perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the
19 evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing
20 petition de novo where state court had issued a ruling on the merits of a related claim, but not the
21 claim alleged by petitioner).  When the state court does not reach the merits of a claim,
22 "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.
23 / / /
24 / / /
25 / / /
26 / / /

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus, under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means only those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to

determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the

1  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

2  The federal habeas court assumes that state court applied the correct law and analyzes whether

3  the state court's summary denial was based on an objectively unreasonable application of that

4  law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner raises four interrelated grounds for relief:  (1) prosecutorial misconduct; (2) ineffective assistance of counsel; (3) unfair jury; and (4) perjured testimony.

#### A.    **Prosecutorial Misconduct**

Petitioner asserts:

> Prosecutor knew or should have known that he presented perjured testimony by letting officer White change his testimony; suppressed the testimony of Maura G. Mendez; by suppressing testimony of crime scene investigator in case #01F06679; letting a juror stay after she said I was guilty before any evidence at time of voir dire; for not getting pictures of me at airport at time of alleged crime.

While petitioner's petition is not well organized, the court finds that respondent accurately summarizes his claims of prosecutorial misconduct as follows:

> The acts of alleged prosecutorial misconduct are: 1) presenting the perjured testimony of Officer White; 2) not presenting the testimony of all defense witnesses who testified at the preliminary hearing, including Maura Mendez, the victim's mother; 3) not eliminating a prospective juror during voir dire; 4) not obtaining photographs of Petitioner at the airport which would have supported Petitioner's alibi defense; and 5) not presenting evidence of the victim's sexual misconduct. The California Supreme Court denied these claims without comment.

These claims were not presented on direct appeal and the California Supreme Court denied all habeas relief without comment or citation.[3]  Therefore, this court reviews to determine whether

---

[3] On direct appeal, petitioner argued that the prosecutor had committed misconduct by making certain statements during closing argument.  This claim is not raised in his federal habeas petition.

the state court's silent denial was an objectively unreasonable application of the law. See id.

Success on a claim of prosecutorial misconduct requires a showing that the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. See Greer v. Miller, 483 U.S. 756, 765 (1987). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990). Even if an error of constitutional magnitude is determined, such error is considered harmless if the court, after reviewing the entire trial record, concludes that the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). Error is deemed harmless unless it "is of such a character that its natural effect is to prejudice a litigant's substantial rights." Kotteakos v. United States, 328 U.S. 750, 760-761 (1946). Depending on the case, a prompt and effective admonishment of counsel or curative instruction from the trial judge may effectively "neutralize the damage" from the prosecutor's error. United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing Simtob, 901 F.2d at 806).

        1.     Use of Perjured Testimony

"If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that testimony is false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict." Ortiz v. Stewart, 149 F.3d 923, 936 (9th Cir. 1998); see also United States v. Bagley, 473 U.S. 667, 678-79 (1985). The petitioner bears the heavy burden of establishing that perjured testimony was used. See United States v. Henson, 123 F.3d 1226, 1240 (9th Cir. 1997), overruled on other ground by United States v. Foster, 165 F.3d 689 (9th Cir. 1999). Even if the witness lied, misconduct occurs only if the prosecutor knew the testimony was false. See United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993).

///

Petitioner asserts that the prosecutor presented the perjured testimony of officer White. It appears that the basis of the claim is petitioner's contention that officer White's testimony at a preliminary hearing was different than the testimony offered at trial. Specifically, petitioner asserts:

> . . . [I]n the first two prelims officer White says something totally different. Any change of testimony is perjury, "<u>A lie is a lie</u>" especially "under oath!!" (emphasis in original).

The court has carefully reviewed the transcripts of officer White's testimony, both at the preliminary hearing and at trial, and finds no inconsistency. At the preliminary hearing, officer White testified that he arrived at the scene in full uniform and attempted to detain petitioner but that petitioner evaded White's control and ran down the street. Eventually White found petitioner in a patio area of an apartment complex and detained him. At the time White found petitioner after he fled, White observed that petitioner had a knife in his hand. At trial, officer White testified that he arrived at the scene and attempted to detain petitioner. White then testified that petitioner evaded him and ran away. White chased petitioner and eventually located him in a patio area a short distance away. Officer White also testified at trial that, at the time he eventually detained petitioner, he saw that petitioner had a knife in his hand.

Based on a review of the record, the court finds that there is nothing inconsistent in White's testimony. In fact, his testimony was substantially the same at both the preliminary hearing and at trial. In addition, White's testimony was consistent with the accounts given by other witnesses. Petitioner has not offered anything beyond the alleged discrepancy to suggest that White's testimony was false. Therefore, the court finds that the state court's rejection of this claim was not an objectively unreasonable application of the law.

///
///
///
///

2. "Suppression" of Evidence

Petitioner asserts that the prosecutor improperly "suppressed" various items of evidence. Specifically, he states that the prosecutor did not present the following: (1) evidence the victim lied before trial; (2) a photograph of petitioner at the airport at the time of the crimes; (3) evidence of the victim's prior sexual conduct; (4) testimony from the victim's mother, Maura Mendez; and (6) testimony from a crime scene investigator who testified at the preliminary hearing. In the petition, petitioner makes numerous references to Brady v. Maryland, 373 U.S. 83 (1963), in support of these claims. It thus appears that petitioner is asserting that the prosecutor committed misconduct by not turning over to the defense potentially exculpatory evidence, as required by Brady.

The court finds this claim to be frivolous. There is a difference between a prosecutor failing to disclose exculpatory evidence and a prosecutor choosing not to present such evidence in his case-in-chief. While the prosecutor has an obligation to do the former, there is no requirement to do the latter. Petitioner has not presented any evidence to establish that the prosecutor failed to disclose any items of potentially exculpatory evidence. And, as respondents note: "The prosecutor certainly must work within the bounds of propriety and fairness, but that obligation does not include putting on the defense case when the defendant is represented by counsel."[4] The court simply cannot say that the state court's rejection of this claim was an objectively unreasonable application of the law.

3. Acceptance of Biased Juror

The Sixth Amendment guarantees a fair trial by an impartial jury. See Irvin v. Dowd, 366 U.S. 717, 722 (1961); Tinsley v. Borg, 895 F.2d 520, 523 (9th Cir.1990). If even a single juror is "unduly biased or prejudiced" the defendant has been denied his right to an impartial jury. See Tinsley, 895 F.2d at 523-24. However, not every incident of juror

---

[4] Whether trial counsel was ineffective with respect to any of the evidence referenced by petitioner is discussed below.

1  misconduct or bias requires a new trial.  See United States v. Klee, 494 F.2d 394, 396 (9th Cir.
2  1974).  "The test is whether or not the misconduct has prejudiced the defendant to the extent that
3  he has not received a fair trial."  Id.  On collateral review, if misconduct occurred, a petitioner
4  must show that the alleged error "'had substantial and injurious effect or influence in determining
5  the jury's verdict.'"  Jeffries v. Blodgett, 5 F.3d 1180, 1190 (9th Cir. 1993) (quoting Brecht v.
6  Abrahamson, 507 U.S. 619, 637 (1993)); see also Hughes v. Borg, 898 F.2d 695, 699 (1990).

In this case, petitioner argues that the prosecutor committed misconduct by accepting a juror who, during voir dire, initially expressed a predisposition to a finding of guilt. According to petitioner, this juror yelled out "guilty" when asked by the judge if she could be fair and impartial. While the record does not contain a transcript of voir dire, the record does reflect that the judge and both counsel accepted this juror after further voir dire questioning. There is simply no evidence that the juror in question was not able to be fair. To the contrary, given that the judge and counsel accepted the juror, it appears that the juror's initial outburst (assuming it even occurred as petitioner states) did not ultimately render her incapable of being fair and impartial. Because petitioner has failed to establish juror bias, he cannot establish prosecutorial misconduct by accepting the juror. Therefore, the state court's rejection of this claim was not objectively unreasonable.

### B.    Ineffective Assistance of Counsel

Petitioner asserts that counsel was ineffective.[5]  Specifically, petitioner claims:

> Ineffective due to not exposing the perjured testimony of officer White; not putting all of my alibis on the stand; no pretrial investigation; no pretrial discovery; for not presenting pictures of me at airport; not putting witnesses on stand for defense; for not showing that the alleged victim was testifying in another trial during the same time I was fighting for my life for the same type of charge saying the same about another whom I know!

---

[5]    In the petition, petitioner states that both trial and appellate counsel were ineffective.  However, the court cannot find any claims specific to appellate counsel.  All of petitioner's claims relate to the trial.

Petitioner also appears to assert that trial counsel was ineffective with respect to DNA evidence. Again, respondents accurately summarize petitioner's numerous ineffective assistance of counsel claims as follows:

> In Claim 2, Petitioner asserts that his Sixth Amendment rights were violated because trial counsel was ineffective in failing to expose the perjured testimony of Officer White; failing to offer all of Petitioner's supporting alibi evidence, such as the testimony of the victim's mother; failing to conduct pretrial investigation and obtain pictures of Petitioner at the airport to support his alibi; failing to show that the victim was making similar allegations against another defendant in a different case; and failing to pursue DNA testing. The California Supreme Court denied these claims without comment.

These claims were all raised in petitioner's post-conviction actions and were denied without comment or citation. Therefore, the court reviews to determine whether the denial was an objectively unreasonable application of the law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

/ / /

/ / /

1       Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S.
2  at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's
3  unprofessional errors, the result of the proceeding would have been different." Id. at 694. A
4  reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.;
5  see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not
6  determine whether counsel's performance was deficient before examining the prejudice suffered
7  by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an
8  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be
9  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at
10 697).
11      As to the allegedly perjured testimony from officer White, for the reasons
12 discussed above, the court finds that officer White did not offer false testimony. Therefore,
13 counsel could not have been ineffective for failing to prevent the jury from hearing perjured
14 testimony from officer White.
15      As to all of petitioner's other alleged instances of ineffectiveness, the court has
16 carefully reviewed petitioner's filings in this case and concludes that he simply has not met his
17 burden of showing either deficient performance or prejudice. For example, petitioner appears to
18 allege that a photograph exists which shows him at the airport at the same time the crimes in this
19 case occurred. However, petitioner has not provided the court with the photograph or otherwise
20 demonstrated its existence, let alone that it shows him at the airport at the time the crimes were
21 committed. Similarly, petitioner appears to be attacking the victim's credibility by asserting that
22 "alleged victim was testifying in another case at time I was fighting for my life, saying a church
23 member molested her; prosecution and defense knew." Again, he has not provided any evidence
24 to support this claim.
25      As to petitioner's allegations that the victim has a history of prior sexual conduct,
26 he has not demonstrated that this is true let alone that any failure to present such evidence

resulted in prejudice.  Even assuming that petitioner's allegations of prior sexual conduct are true, the victim's prior sexual conduct does not necessarily rule out petitioner's guilt for the instant offenses.  Such evidence would merely go to the victim's credibility, which is a question for the jury.  It is entirely possible that the jury would nonetheless have believed the victim's version of events, even if she has a history of prior sexual conduct.  In other words, the court cannot say that there is a reasonable probability that the outcome of the trial would have been different had such evidence, if it exists, been produced by trial counsel.

Concerning the DNA evidence, respondents' argument is persuasive:

> Petitioner speculates, without any support, that defense counsel may not have been told about the DNA evidence until the time of trial. (Petition at 4.). . . Petitioner asserts that the defense should have pursued its own DNA testing.  Petitioner offers only his speculation that further testing might have shown the presence of the victim's mother's DNA on the couch, which would support his assertion that his own DNA was on the couch due to consensual sex with an adult. Petitioner does not explain the fact that DNA consistent with his own was found on the child-victim's clothing.  Furthermore, since a complete DNA match could not be made from the clothing sample, additional DNA testing was not in the Petitioner's interest.. . .

Particularly persuasive is respondents' point that the DNA evidence which was presented was not entirely conclusive because a certain match could not be made.  This was favorable to the defense.  Had DNA evidence been re-tested, as petitioner now suggests, it is possible that a stronger match could have been found.  While it is also possible that a weaker match, or no match, would have resulted from re-testing, trial counsel's decision not to pursue re-testing represents a tactical choice and does not demonstrate constitutionally deficient performance.

Petitioner's claims of ineffective assistance of counsel simply do not undermine this court's confidence in the outcome of the trial.  In particular, the court notes four items of very strong evidence:  (1) petitioner's statement to police officers when he was apprehended that he was "going down for this"; (2) DNA evidence linking defendant to the physical evidence of the crime; (3) Whalan's testimony concerning her examination of the victim; and (4) the victim's initial statements concerning the crimes.

### C. Unfair Jury

Petitioner renews his assertion that his constitutional rights were violated because a juror on his case had expressed a bias in favor of guilt during voir dire. As discussed above, petitioner has not established that the juror was actually biased. The record reflects that, at the conclusion of voir dire, the judge and both counsel accepted the juror as fair and impartial.

### D. Perjured Testimony

Petitioner renews his assertion that officer White committed perjury. As discussed above, there is no evidence that White's testimony was false.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and
2. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2008

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE